UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

CALVIN VINSON JR. #194753,

        Plaintiff,                Case No. 2:09-cv-46

v.                                        Honorable R. Allan Edgar

GERALD RILEY, et al.,

        Defendants.

_____/

## **OPINION**

Plaintiff Calvin Vinson Jr., an inmate currently confined at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Chaplain Gerald Riley, Assistant Resident Unit Supervisor Denise Gerth, and Warden David Bergh, all of whom were employed at the Alger Maximum Correctional Facility (LMF) during the pertinent time period.

Plaintiff's complaint alleges that he is a Moorish American National through his ancestral genealogy. On August 19, 2004, while he was confined at MBP, Plaintiff submitted his declaration of religious preference form to the chaplain informing him of Plaintiff's religious affiliation: "Hebrew Israelite adherent to Judaism." In November of 2005, Plaintiff requested that he be allowed to participate in the Kosher diet program. Plaintiff was approved for a Kosher diet and was transferred to LMF on November 20, 2005. Plaintiff believes that his ancient ancestors were "Hebraic people."

Plaintiff alleges that in January of 2008, he was told by several prisoners that the prison administration allowed a ceremonial gathering for Noble Drew Ali's birthday and that a pamphlet had been created in remembrance. Plaintiff wrote to Defendant Riley and requested a copy of the pamphlet. On February 27, 2008, Plaintiff received a notice of intent (NOI) to conduct a hearing regarding whether Plaintiff should be removed from the Kosher Meal Program. The NOI, which had been written by Defendant Riley, stated that Plaintiff had requested Moorish Science Temple of America (MSTA) reading material, and that in his request, he had referred to himself as an "active Moor." Defendant Riley further noted that followers of MSTA are not required to maintain a Kosher diet, and that a prisoner who changes his religious affiliation to one that does not require a Kosher diet may be removed from the Kosher Meal Program.

Plaintiff alleges that after he received the NOI, he noticed that Defendant Riley had falsified the NOI by placing an "x" in the box that indicated Plaintiff had waived his right to a hearing and agreed with the proposed disposition. Plaintiff states that he never agreed to such a waiver. Plaintiff then contacted Defendant Gerth, who conducted a hearing on March 3, 2008. During the hearing, Plaintiff stated that Moorish American was his nationality, not his religion. Plaintiff asserted that he had the right to possess reading material from other religions and that his religion is represented by many different sects and that "the MDOC can not tell [Plaintiff] how to believe or worship his God." Defendant Gerth told Plaintiff that she believed he was trying to create his own religion and that she would speak to the Chaplain. On March 4, 2008, Plaintiff received her decision, which stated that he would be removed from the Kosher Diet. The decision further noted that Plaintiff was unable to produce any literature about his faith or in support of his claim that it required a Kosher diet. Plaintiff states that he informed Defendant Bergh of the facts of this case and sought

relief, to no avail. Plaintiff claims that Defendants' conduct violated his rights under the First and Fourteenth Amendments and seeks compensatory and punitive damages, as well as declaratory relief.

Presently before the Court is the Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants claim that Defendant Bergh is entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies with regard to him. Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those

4

involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

Defendants state that Plaintiff failed to name Defendant Bergh in his Step I grievance, so that Defendant Bergh is entitled to summary judgment for lack of exhaustion. In response to this assertion, Plaintiff states that Defendant Bergh did not become involved until Step II of the grievance procedure, when he improperly denied Plaintiff's grievance appeal. Plaintiff states that he could not file a separate grievance on Defendant Bergh because it would have been rejected as duplicative. The Sixth Circuit rejected an argument that later similar acts could not be exhausted because they would be rejected as duplicative. "If [the prisoner] had filed a grievance that was denied as duplicative he

5

would have exhausted administrative remedies and been permitted to file a complaint. However, he may not merely assume that a grievance would be futile and proceed directly to federal court with his complaints." *Wells v. Neva*, No. 00-1030, 2000 WL 1679441, at *2 (6th Cir. Nov. 1, 2000). Therefore, Plaintiff's contention is meritless. The court concludes that Defendant Bergh is entitled to summary judgment for lack of exhaustion.

Furthermore, it does not appear as if Defendant Bergh was personally involved in the alleged misconduct. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time

6

when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendant Bergh was personally involved in the activity which forms the basis of his claim. Defendant Bergh's only role in this action involves the denial of an administrative grievance. Defendant Bergh cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Defendant Bergh is entitled to summary judgment for lack of personal involvement.

Defendants also claim that Plaintiff's rights under the First Amendment and Religious Land Use and Institutionalized Persons Act (RLUIPA) were not violated when he was removed from the Kosher Meal Program. While "incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain First Amendment protection to freely exercise their religion, *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987), subject to reasonable restrictions and limitations related to legitimate penological interests. *Id.* at 350-53; *accord Turner v. Safley*, 482 U.S.

78, 89 (1987). First Amendment protection extends to all religious beliefs, and guaranties "religious liberty and equality to the infidel, the atheist, or the adherent of a non-Christian faith ..."). *County of Allegheny v. ACLU*, 492 U.S. 573, 615 (1989).

To state a free exercise claim, a plaintiff must allege facts from which an inference may be drawn that the government has placed "a substantial burden on the observation of a central religious belief or practice." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). Likewise, RLUIPA provides in pertinent part that, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... unless the government demonstrates that imposition of the burden ..." furthers "a compelling governmental interest" and is done so by the least restrictive means. 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA's institutionalized-persons provision alleviates exceptional government-created burdens on private religious exercise. *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005).

In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). While this definition of religious exercise is broad, it does require that Plaintiff's religious beliefs be "sincerely held." *See, e.g., Episcopal Student Foundation v. City of Ann Arbor*, 341 F.Supp.2d 691, 700 (E.D. Mich. 2004) (citation omitted); *Lovelace v. Lee*, 472 F.3d 174, 187 n.2 (4th Cir. 2006) (citations omitted). However, prison officials may not inquire into whether a particular belief or practice is "central" to a prisoner's religion. *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (recognizing that "the truth of a belief is not open to question, rather the question is whether the objector's beliefs are truly held").

While the phrase "substantial burden" is not defined in RLUIPA, courts have concluded that a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water Church of God v. Charter Township of Meridian*, 258 Fed. Appx. 729, 733-34 (6th Cir., Dec. 10, 2007) (citations omitted); *see also*, *Marshall v. Frank*, 2007 WL 1556872 at *5 (W.D. Wis., May 24, 2007) (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)) (a substantial burden is one which renders religious exercise "effectively impracticable"); *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise).

In *Colvin v. Caruso*, 605 F.3d 282, 295 (6th Cir. 2010), the Sixth Circuit held that the district court erred in denying the plaintiff's motion to amend to include claims that he was wrongfully removed from the Kosher Meal Program and was wrongly denied reinstatement. The case for the first time held that Michigan's use of a test to determine whether an inmate knows enough about his religion is improper because it is based on an improper constitutional standard. *Id.* at 298. The court further suggested that the prison's policy of terminating a religious meal program based on a one-time possession of a non-Kosher item may be unreasonable under the First Amendment and RLUIPA. *Id.* at 296-97. The court found, however, that the plaintiff's allegations that he was deprived of Kosher meals for a short period and occasionally thereafter failed to state a claim as it involved mere negligence. *Id.* at 293.

In this case, Defendant Riley asserts that he recommended Plaintiff's involuntary termination from the Kosher Meal Program after Plaintiff sent him a book request stating that he was an "active Moor." In his affidavit, Defendant Riley attests that the Kosher Meal Program is for

9

prisoners whose religions require Kosher meals. Moorish Science Temple of America (MTSA) is a nationality, as well as a religion. On March 24, 2008, Plaintiff informed Defendant Riley that he had been reinstated to the Kosher Meal Program. (Defendants' Exhibit A, ¶¶ 6-7, 11.)

During the hearing on the issue of whether Plaintiff should be removed from the Kosher Meal Program, Plaintiff indicated that he is an "African Hebrew Israelite" who honors "Jesus, Mohammed, Confucius, Buddha and the Noble Drew Ali." Plaintiff also stated that his beliefs required a Kosher menu, but was unable to produce any written literature about this faith or any that outlines his need for such a diet. Defendant Gerth concluded that Plaintiff was "designing" his own religion. (Exhibit D to Plaintiff's complaint, docket #1.)

In response to Defendants' motion, Plaintiff notes that he had been approved for the Kosher Meal Program based on his stated religion. Plaintiff asserts that he did not change his religious preference merely because he stated that he was an "active Moor." Plaintiff also states that Defendants cannot measure the sincerity of his religious belief in Judaism solely because he admits to a Moorish American Nationality. As noted by the Sixth Circuit in *Colvin*:

> the touchstone for determining whether a religious belief is entitled to free-exercise protection is an assessment of "whether the beliefs professed ... are *sincerely held,*" not whether "the belief is accurate or logical." *Jackson v. Mann,* 196 F.3d 316, 320(2dCir.1999) (emphasis in original) (citations and internal quotation marks omitted). And, under RLUIPA, prison officials are to focus their inquiries on "the sincerity of a prisoner's professed religiosity." *See Cutter v. Wilkinson,* 544 U.S. 709, 725 n. 13, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005).

*Colvin*, 605 F.3d at 298.

Because the court concludes that there is a genuine issue of material fact regarding whether Defendants' conduct violated Plaintiff's First Amendment and RLUIPA rights, Defendants are not entitled to summary judgment on these claims.

Plaintiff claims that Defendant Riley violated his due process rights by placing in "x" in the box on the NOI which indicates the waiver of a formal hearing. However, as noted by Defendants, Plaintiff did in fact receive a hearing during which he was able to present evidence on his own behalf, which is all that is required for due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. *Zinermon v. Burch*, 494 U.S. 113, 127-28, 110 S. Ct. 975, 984 (1990). The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9, 100 S. Ct. 553, 558, n. 9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon*, 494 U.S. at 125, 110 S. Ct. at 983 (1990) (emphasis in original). Therefore, Defendants are entitled to summary judgment on Plaintiff's due process claims.

Defendants assert that they are entitled to summary judgment on Plaintiff's official capacity claims against them because such claims are barred by the Eleventh Amendment. Any claims against the individually-named Defendants in their official capacities do not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished). Moreover, the Eleventh

Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).[1] The State of Michigan has not consented to civil rights suits in the federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Eleventh Amendment therefore bars official-capacity suits for damages against its employees. Therefore, any official capacity claims are properly dismissed.

Defendants also claim Plaintiff's individual capacity claims are barred by qualified immunity because Plaintiff has failed to show a violation of clearly established law. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

---

[1] The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as monetary damages, is deemed to be against the State, whose officers are the nominal Defendants, the claim is barred by the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir. 1994).

Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely

disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

\*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a

14

plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).

When ruling on qualified immunity, this court must expressly identify the right at issue and summarize the factual or evidentiary basis for its conclusion. *Noble*, 87 F.3d at 161; *Wegener*, 933 F.2d at 392. In determining whether a clearly established right exists, the district court looks first to the binding precedent of the Supreme Court, then to that of the Sixth Circuit, and then finally to decisions of other jurisdictions. *Wegener*, 933 F.2d at 392; *Masters v. Crouch*, 872 F.2d 1248, 1251-52 (6th Cir.), *cert. denied sub nom*, *Frey v. Masters*, 493 U.S. 977 (1989); *Poe v. Haydon*, 853 F.2d 418 (6th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989); *Ohio Civil Service Employees Assn. v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988). Public officials are expected to be aware of clearly established

15

law specifically governing their conduct. *Long v. Norris*, 929 F.2d 1111, 1115 (6th Cir.), *cert. denied sub nom*, *Jones v. Long*, 502 U.S. 863 (1991).

In this case, Plaintiff has alleged that conforming to a Kosher diet is central to his religious beliefs. It is well established that preventing Plaintiff from exercising such a right constitutes a violation of both the First Amendment and the RLUIPA. Defendants reliance on an objective standard for determining whether Plaintiff should be allowed to continue with the Kosher Meal Program failed to take into account his subjective religious beliefs. Therefore, the court concludes that Defendants are not entitled to qualified immunity with regard to Plaintiff's First Amendment and RLUIPA claims.

In light of the foregoing, the court concludes that Defendants are entitled to summary judgment on Plaintiff's claims against Defendant Bergh, as well as on Plaintiff's due process claims. However, Defendants Riley and Gerth are not entitled to summary judgment on Plaintiff's First Amendment and RLUIPA claims.

In addition, the court will grant Plaintiff's motion for a copy of his complaint without cost (docket #22).

An Order consistent with this Opinion will be entered.


Dated: September 27, 2010                     /s/ R. Allan Edgar
                                              R. ALLAN EDGAR
                                              UNITED STATES DISTRICT JUDGE